**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BLOCKWARE SOLUTIONS LLC,<br><br>*Plaintiff*<br><br>v.<br><br>MAWSON BELLEFONTE LLC and MAWSON INFRASTRUCTURE GROUP, INC.,<br><br>*Defendants.* | CIVIL ACTION NO.<br>_____<br><br>**COMPLAINT FOR MONEY DAMAGES AND DEMAND FOR JURY TRIAL** |

Plaintiff Blockware Solutions LLC ("Plaintiff" or "Blockware"), by and through its undersigned counsel, brings this action against Mawson Bellefonte LLC ("Mawson Bellefonte") and Mawson Infrastructure Group, Inc. ("Mawson Infrastructure") (collectively, "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1.      This is an action for non-payment for equipment Defendants contracted to purchase and which they received but failed to pay for.

2.      As a result of Defendants' wrongful conduct and breach of contract, Blockware has sustained general, special, consequential, and incidental damages in an amount to be proven at trial and now estimated to exceed $474,188.97.  Accordingly, Blockware seeks monetary damages in an amount to be proven at trial and now estimated to exceed $474,188.97.

## THE PARTIES

3.      Plaintiff Blockware Solutions LLC is a limited liability company organized under the laws of the State of Delaware.  Its citizenship, for diversity purposes, is determined by the

citizenship of its members.  The two members of Blockware Solutions LLC are citizens of the State of New York and the State of Florida.

4.      Defendant Mawson Infrastructure Group, Inc. is a Delaware corporation with its principal place of business located in Midland, Pennsylvania.

5.      Upon information and belief, Defendant Mawson Bellefonte LLC is a wholly owned subsidiary of Defendant Mawson Infrastructure Group, Inc.

6.      Defendant Mawson Bellefonte LLC is a limited liability company existing under the laws of the State of Delaware with its headquarters and principal place of business in Midland, Pennsylvania.  Its citizenship, for diversity purposes, is determined by the citizenship of its members.  Thus, for diversity purposes, upon information and belief, Mawson Bellefonte LLC is a citizen of Delaware and Pennsylvania.

**JURISDICTION AND VENUE**

7.      This Court has jurisdiction to hear this action pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.      There is complete diversity because Plaintiff Blockware Solutions LLC is a citizen of New York and Florida for purposes of diversity jurisdiction; upon information and belief, Defendant Mawson Bellefonte LLC is a citizen of Delaware and Pennsylvania for purposes of diversity jurisdiction; and Defendant Mawson Infrastructure Group, Inc. is a citizen of Delaware and Pennsylvania for purposes of diversity jurisdiction.

9.      Accordingly, there is complete diversity among Plaintiff and Defendants.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

**DEMAND FOR JURY**

11.     Plaintiff hereby demands a jury trial.

**FACTUAL ALLEGATIONS**

12.     This is a breach of contract action wherein Plaintiff supplied, but Defendants failed to pay for, bitcoin mining equipment in accordance with the terms of the parties' contract.

13.     Plaintiff, among other things, sells bitcoin mining hardware in the United States Market.

14.     Defendant Mawson Infrastructure is a publicly traded company which, according to its website (available at https://www.mawsoninc.com/) "own[s] and operate[s] Bitcoin Mining facilities and infrastructure that [it] combine[s] with [its] digital assets' strategic and operational expertise."

15.     Defendant Mawson Bellefonte LLC has no website.

16.     By way of background, bitcoin mining is the process of creating new bitcoin using computing systems that compete to solve mathematical problems. This process also verifies and validates the information regarding the bitcoin transactions on the bitcoin network and by doing so prevents double-spending. "Mining" of bitcoins is accomplished using energy-intensive, powerful computers and sophisticated equipment located in data centers to solve complex cryptographic hash puzzles to verify transactions that are then updated on the decentralized blockchain ledger. In return for solving these puzzles, verified miners are rewarded with newly minted bitcoin (subject to a fixed cap on total bitcoins that may be minted), but they also receive fees from any transaction contained in each block of transactions (which fees, in turn, ensure that miners have the incentive to mine and validate bitcoin transactions and keep the network going).

17.     With each passing week the complex cryptographic hash puzzles grow more and more complex, requiring more and more computing power, and there are fewer and fewer Bitcoins remaining to be mined.

18.     Bitcoin mining is big business. According to CoinMarketCap, the value of all the bitcoins in the world was over $1.198 trillion as of April 17, 2024.  While the value of bitcoins fluctuates, a single bitcoin was worth $60,836.98 on April 17, 2024.  Thousands of companies accept bitcoin as payment and a growing number of Wall Street firms (including J.P Morgan, Morgan Stanley, and others) are expanding their footprint in the cryptocurrency sector.

19.     It is usual and customary practice for cryptocurrency mining companies to run their miners on a full-time basis (24 hours per day, 365 or 366 days per year).  When miners are not running, they are not making money for cryptocurrency mining companies.

20.     Both players in the cryptocurrency mining space, Plaintiff's business relationship with Mawson Infrastructure, under one if its former aliases, began in 2019.

21.     Plaintiff, and/or its affiliates, and Mawson Infrastructure, and/or its affiliates, have done approximately 15 deals together, including the one which underlies the instant dispute.

22.     In early 2023, Mason Jappa, the CEO of Plaintiff; James Manning, the former CEO of Mawson Infrastructure; and Liam Wilson, the former COO of Mawson Infrastructure entered negotiations in and from New York, New York, for the prospective sale of certain equipment owned by Plaintiff.

23.     A few months later, in May 2023, Plaintiff and Mawson Bellefonte entered into an agreement (the "Contract" attached hereto as **Exhibit 1**), whereby Mawson Bellefonte would purchase "the power distribution equipment which the [Plaintiff] left at 2022 Axmann Road,

Bellefonte, PA, which was not transferred to the landlord" (the "Equipment") for $350,000.00 (the "Purchase Price").

24.     The Equipment that is the subject of this Contract is as follows:

| Item | Description | Quantity |
|---|---|---|
| 1 | LESS FUSES | 1 |
| 2 | HCJ50918-PNLBD INTERIOR I-LINE 800A MLO 3PH Square D Panels. Loaded with 60amp breakers | 4 |
| 3 | 5 KV Fused Disconnect Federal Pioneer load break switch model NAL-5, 4.16kV, 600A, 60kV BIL, 40 KA | 2 |
| 4 | Fuse Refills, Westinghouse RBA-400, 8.25 kV, 400E | 9 |
| 5 | 800amp, Micrologic 6.0A LSIG trip unit, I-Line, Load Lugs Provided. | 4 |
| 6 | Siemens, RLE-800, 800 amp "Extended Interrupting" manually operated | 2 |
| 7 | Eaton, CHND3800T33W, 3p, 65kAIC@ 480v, 800amp, 100% Rated, RMS-310 LSIG Trip Unit, lugs sold separately. | 2 |
| 8 | Low Voltage: 480 Y 277, 10 kV BIL | 1 |
| 9 | electrically operated vacuum circuit breaker | 1 |
| 10 | 4] 800amp LSIG, 100% Fixed Mounted Breakers | 1 |
| 11 | 4] 800amp LSIG, 100% Fixed Mounted Breakers | 1 |
| 12 | External Mount Surge Protection Device | 2 |
| 13 | 800A NEMA 1 Panel Board 8x with 8x breakers | 8 |
| 15 | National Industri 2666/2000kVA 4160 Delta - 480/277 Dry Type Transformer (GA0094) | 1 |
| 16 | CH 4000A Pow-R-Line PRL-C LSIG Main Breaker Switchboard 480Y/277 (DW4213) | 1 |

25.     As detailed in the Contract, $114,400.00 of the Purchase Price was credited to Mawson Bellefonte in consideration of a past sale between the Plaintiff Seller and Defendant Buyer.

26.     However, that past sale was not with the Defendant entity Mawson Bellefonte.[1]  In fact, the past sale was between Plaintiff and Cosmos Infrastructure LLC ("Cosmos"), a wholly owned subsidiary of Mawson Infrastructure, for which Plaintiff owed Cosmos the abovesaid sum.

27.     The invoice issued by Cosmos to Plaintiff directed Plaintiff to make payments to an account held in New York, New York.

28.     After taking into account the $114,400.00 credit that was owed to Cosmos, Mawson Bellefonte then owed Plaintiff the remaining balance of $235,600.00 under the Contract.

29.     Per the Contract, that $235,600.00 was to be paid as follows:

---

[1] As stated in Mawson Infrastructure's filings with the U.S. Securities and Exchange Commission, Mawson Bellefonte was formed on May 5, 2023.

     i.  $60,600.00 within 10 days of the effective date of the Contract (the "Initial Payment")

    ii.  5 installment payments, each in the amount of $35,000.00, on the first day of June, July, August, September, and November.

30.    Per the Contract, payments not received by the first day of each month incur a 10 percent late fee.

31.    Per the Contract, if any installment payment is not received by the Plaintiff by the fifth day of the month, the entire outstanding balance becomes immediately due and payable.

32.    On May 24, 2023, Mawson Infrastructure paid $60,600.00 to Plaintiff.  This satisfied the Initial Payment.

33.    On May 24, 2023, Plaintiff fully performed under the Contract by leaving the Equipment in its then-current location, as per the Contract.

34.    On May 30, 2023, Plaintiff sent Mawson Bellefonte an invoice for $35,000.00 for the June installment payment.

35.    On June 1, 2023, Plaintiff sent Mawson Bellefonte an invoice for $35,000.00 for the July installment payment.

36.    On June 15, 2023, Mawson Infrastructure paid $70,000.00 to Plaintiff, satisfying the June and July installment payments.

37.    On August 3, 2023, Plaintiff sent Mawson Bellefonte an invoice for $38,500.00 for the August installment payment, consisting of the $35,000.00 payment due under the Contract on August 1, 2023, and a $3,500.00 (10 percent) late fee.

38.    Defendants did not pay the August 3, 2023 invoice.

39.    Defendants did not object to the August 3, 2023 invoice.

40.     On September 1, 2023, Plaintiff sent Mawson Bellefonte an invoice for $35,000.00 for the September installment payment.

41.     Defendants did not pay the September 1, 2023 invoice.

42.     Defendants did not object to the September 1, 2023 invoice.

43.     On November 1, 2023, Plaintiff sent Mawson Bellefonte an invoice for $35,000.00 for the November installment payment.

44.     Defendants did not pay the November 1, 2023 invoice.

45.     Defendants did not object to the November 1, 2023 invoice.

46.     On January 10, 2024, Plaintiff sent Mawson Bellefonte an invoice for $115,500.00, combining the three overdue installment payments (August, September, and November, each in the amount of $35,000.00) and the attendant late fees (each in the amount of $3,500.00) (attached hereto as **Exhibit 2**).

47.     Defendants never paid the aggregated January 10, 2024 invoice.

48.     Nor did Defendants object to the January 10, 2024 invoice.

49.     To the contrary, upon defaulting on the payments, in various emails Defendants acknowledged that they owed these payments to Plaintiff.  Yet, they have failed to remit the payments due.

50.     Plaintiff has continuously demanded payment from Defendants and attempted to settle the dispute outside of court to no avail.

51.     The proceeds due and owing to Plaintiff under the Contract were to be invested into other cryptocurrency mining opportunities.

52.     Due to Defendants' failure to make payments, Plaintiff has been unable to invest the funds and thus has not earned profits on those funds, as Plaintiff had intended.

53.     Upon information and belief, the Equipment remains located at the Defendants' facility in Bellefonte, Pennsylvania.

54.     The Contract provides that New York law governs.

### FIRST CLAIM FOR RELIEF

### Breach of Contract against Mawson Bellefonte LLC

55.     Plaintiff hereby incorporates the allegations set forth in the preceding paragraphs 1–54 as though set forth here in their entirety.

56.     The Contract is a valid and enforceable contract between the parties.

57.     Plaintiff fully performed its obligations under the Contract.

58.     Mawson Bellefonte breached the Contract by, *inter alia*, failing to make the required payments under the Contract.

59.     In addition, under New York law, in every contract, including the Contract at issue here, there is an implied covenant of good faith and fair dealing.

60.     Mawson Bellefonte was at all times bound to honor its implied covenant of good faith and fair dealing.

61.     Mawson Bellefonte breached its implied covenant of good faith and fair dealing by failing to pay for the Equipment it purchased pursuant to the Contract.

62.     As a direct and proximate result of Mawson Bellefonte's breach, Plaintiff suffered actual, incidental, and consequential damages in an amount to be determined at trial of not less than $115,500.00.

63.     Upon information and belief, as of April 16, 2024, Plaintiff additionally suffered consequential damages due to its lost profits caused by the failure to remit payment, in an amount to be determined at trial of not less than $358,688.97.

64.     As a direct and proximate cause of Mawson Bellefonte's breach of contract and breach of the covenant of good faith and fair dealing, Plaintiff has suffered damages in an amount to be determined at trial but in no event less than $474,188.97, plus any other special, indirect, incidental, or consequential damages, and interest.

## SECOND CLAIM FOR RELIEF

### Breach of Contract against Mawson Infrastructure Group, Inc.

65.     Plaintiff hereby incorporates the allegations set forth in the preceding paragraphs 1–64 as though set forth here in their entirety.

66.     Mawson Infrastructure is the parent corporation of Mawson Bellefonte.

67.     Mawson Infrastructure's CEO signed the Contract.

68.     Mawson Infrastructure's CEO and COO negotiated the Contract.

69.     Mawson Infrastructure's intent to be bound by the contract is inferred from its participation in, *inter alia*, the negotiation of the Contract.

70.     Mawson Infrastructure's tender of two payments on the Contract evinces its intent to be bound as it assumed Mawson Bellefonte's obligations under the Contract.

71.     Mawson Infrastructure's correspondence with Plaintiff following Defendants' breach of the Contract evinces its assumption of the Contract.

72.     Mawson Infrastructure's intent to be bound by the Contract is inferred from its own press releases, wherein Mawson Infrastructure expressly refers to the site in Bellefonte, Pennsylvania in connection with "growth for [its] self-mining business."

73.     Mawson Bellefonte is a mere dummy for Mawson Infrastructure.

74.     Mawson Bellefonte is controlled by Mawson Infrastructure for Mawson Infrastructure's own purposes.

75.     Mawson Infrastructure breached the Contract by, *inter alia*, failing to make the required payments under the Contract.

76.     In addition, under New York law, in every contract, including the Contract at issue here, there is an implied covenant of good faith and fair dealing.

77.     Mawson Infrastructure was at all times bound to honor its implied covenant of good faith and fair dealing.

78.     Mawson Infrastructure breached its implied covenant of good faith and fair dealing by failing to pay for the Equipment in purchased pursuant to the Contract.

79.     As a direct and proximate result of Mawson Infrastructure's breach, Plaintiff suffered actual, incidental, and consequential damages in an amount to be determined at trial of not less than $115,500.00.

80.     Upon information and belief, as of April 16, 2024, Plaintiff additionally suffered consequential damages due to its lost profits caused by the failure to remit payment, in an amount to be determined at trial of not less than $358,688.97.

81.     As a direct and proximate cause of Mawson Infrastructure's breach of contract and breach of the covenant of good faith and fair dealing, Plaintiff has suffered damages in an amount to be determined at trial but in no event less than $474,188.97, plus any other special, indirect, incidental, or consequential damages, and interest.

### THIRD CLAIM FOR RELIEF

### Breach of Contract against Mawson Infrastructure Group, Inc. under Alter Ego Theory (in the alternative)

82.     Plaintiff hereby incorporates the allegations set forth in the preceding paragraphs 1–81 as though set forth here in their entirety.

83.     The Contract is a valid and enforceable contract between the parties.

84.     Plaintiff fully performed its obligations under the Contract.

85.     Mawson Bellefonte breached the Contract by, *inter alia*, failing to make the required payments under the Contract.

86.     In addition, under New York law, in every contract, including the Contract at issue here, there is an implied covenant of good faith and fair dealing.

87.     Mawson Bellefonte was at all times bound to honor its implied covenant of good faith and fair dealing.

88.     Mawson Bellefonte breached its implied covenant of good faith and fair dealing by failing to pay for the Equipment in purchased pursuant to the Contract.

89.     As a direct and proximate result of Mawson Bellefonte's breach, Plaintiff suffered actual, incidental, and consequential damages in an amount to be determined at trial of not less than $115,500.00.

90.     Upon information and belief, as of April 16, 2024, Plaintiff additionally suffered consequential damages due to its lost profits caused by the failure to remit payment, in an amount to be determined at trial of not less than $358,688.97.

91.     As a direct and proximate cause of Mawson Bellefonte's breach of contract and breach of the covenant of good faith and fair dealing, Plaintiff has suffered damages in an amount to be determined at trial but in no event less than $474,188.97, plus any other special, indirect, incidental, or consequential damages, and interest.

92.     Mawson Bellefonte was and is the alter ego of Mawson Infrastructure and therefore Mawson Infrastructure is liable for the moneys owed by Mawson Bellefonte.

93.     Mawson Infrastructure's CEO signed the Contract.

94.     Mawson Infrastructure's CEO and COO negotiated the Contract.

95.     Per the Contract, email notifications were to be sent to Mawson Infrastructure's "mawsoninc.com" email addresses.

96.     Per the Contract, hard copy notices were to be sent to an address in Sharon, Pennsylvania, which is the former address of Mawson Infrastructure's principal executive offices.  Upon information and belief, another Mawson Infrastructure subsidiary, Luna Squares Property ("Luna") leased the property at the Sharon address.

97.     Upon information and belief, throughout the relevant period, Mawson Infrastructure controlled and dominated the affairs of Mawson Bellefonte, such that Mawson Bellefonte was and is an alter-ego of Mawson Infrastructure.

98.     Mawson Infrastructure expressly states in its U.S. Securities and Exchange Commission (the "SEC") filings that Mawson Bellefonte LLC is its subsidiary.

99.     The consolidated financial statements that Mawson Infrastructure prepares and files with the SEC "include[s] the results of the Company's subsidiaries," including "Mawson Bellefonte LLC."

100.    Mawson Infrastructure and Mawson Bellefonte comingle funds— Mawson Infrastructure rendered the two payments that were actually made to Plaintiff.

101.    Additionally, the funds of Cosmos, another Mawson Infrastructure subsidiary, have been comingled with those Defendants inasmuch as a credit due to Cosmos was applied to a contract executed by Mawson Bellefonte, which in reality is for the benefit of Mawson Infrastructure.

102.    Further, per the deposition testimony of their corporate representative in another litigation, the funds of Luna have also been comingled with those of Cosmos and Mawson Infrastructure.

103. Per SEC filings and Mawson Infrastructure's own press releases, Mawson Bellefonte entered into a lease agreement for premises for the benefit of Mawson Infrastructure, from which Mawson Infrastructure utilizes and profits from the Equipment that is the subject of the Contract at issue.

104. Upon information and belief, Mawson Bellefonte is not adequately capitalized and did not have sufficient funds to cover its foreseeable liabilities, including those owed to Blockware, creating an unjust result for creditors.

105. Per the deposition testimony of their corporate representative, Luna was and/or is likely undercapitalized and today, Mawson Infrastructure, Cosmos, and Luna could not, separately, or together satisfy a $15.3 million judgment in another litigation matter.

106. Upon information and belief, Mawson Infrastructure completely dominates and controls Mawson Bellefonte and uses it to defraud its customers and hinder creditors, such as Plaintiff herein.

107. Mawson Bellefonte has no separate management and shares its executive team with Mawson Infrastructure.

108. Upon information and belief, Mawson Infrastructure regularly fails to observe business formalities regarding its management and operation of Mawson Bellefonte.

109. Upon information and belief, Mawson Infrastructure has used Mawson Bellefonte, and its other subsidiaries, as a vehicle to commit fraudulent and other wrongful acts against Plaintiff and other members of the public.

110.     Upon information and belief, Mawson Infrastructure has apparently made a regular practice of using its subsidiaries, including Cosmos, to commit such wrongful acts and avoid its liabilities.

111.     As such, Mawson Bellefonte is the alter ego of Mawson Infrastructure, and Mawson Infrastructure is liable for Mawson Bellefonte's debt herein under a veil piercing or alter ego theory.

## FOURTH CLAIM FOR RELIEF

### Account Stated against Mawson Bellefonte LLC

112.     Plaintiff hereby incorporates the allegations set forth in the preceding paragraphs 1–111 as though set forth here in their entirety.

113.     Plaintiff rendered invoices to Mawson Bellefonte totaling $350,000.00.

114.     Mawson Bellefonte made no objections to the invoices.

115.     Mawson Infrastructure made partial payments.

116.     There remains $115,500.00 outstanding.

117.     An account stated has been created.

118.     Accordingly, Mawson Bellefonte is liable to Plaintiff for the sum of $115,500.00, plus any special, indirect, incidental, or consequential damages, and interest.

119.     Upon information and belief, as of April 16, 2024, Plaintiff additionally suffered consequential damages due to its lost profits caused by the failure to remit payment, in an amount to be determined at trial of not less than $358,688.97.

120.     As such, Plaintiff has suffered damages in an amount to be determined at trial but in no event less than $474,188.97, plus any other special, indirect, incidental, or consequential damages, and interest.

## FIFTH CLAIM FOR RELIEF

### Account Stated against Mawson Infrastructure Group, Inc.
### under Alter Ego Theory

121.    Plaintiff hereby incorporates the allegations set forth in the preceding paragraphs 1–120 as though set forth here in their entirety.

122.    Plaintiff rendered invoices to Mawson Bellefonte totaling $350,000.00.

123.    Mawson Bellefonte made no objections to the invoices.

124.    Mawson Infrastructure made partial payments.

125.    There remains $115,500.00 outstanding.

126.    An account stated has been created.

127.    Accordingly, Mawson Bellefonte is liable to Plaintiff for the sum of $115,500.00, plus any special, indirect, incidental, or consequential damages, and interest.

128.    Upon information and belief, as of April 16, 2024, Plaintiff additionally suffered consequential damages due to its lost profits caused by the failure to remit payment, in an amount to be determined at trial of not less than $358,688.97.

129.    As such, Plaintiff has suffered damages in an amount to be determined at trial but in no event less than $474,188.97, plus any other special, indirect, incidental, or consequential damages, and interest.

130.    Mawson Bellefonte was and is the alter ego of Mawson Infrastructure and therefore Mawson Infrastructure is liable for the moneys owed by Mawson Bellefonte.

131.    Mawson Infrastructure's CEO signed the Contract.

132.    Mawson Infrastructure's CEO and COO negotiated the Contract.

133.    Per the Contract, email notifications were to be sent to Mawson Infrastructure's "mawsoninc.com" email addresses.

134.   Per the Contract, hard copy notices were to be sent to an address in Sharon, Pennsylvania, which is the former address of Mawson Infrastructure's principal executive offices.  Upon information and belief, another Mawson Infrastructure subsidiary, Luna Squares Property ("Luna") leased the property at the Sharon address.

135.   Upon information and belief, throughout the relevant period, Mawson Infrastructure controlled and dominated the affairs of Mawson Bellefonte, such that Mawson Bellefonte was and is an alter-ego of Mawson Infrastructure.

136.   Mawson Infrastructure expressly states in its SEC filings that Mawson Bellefonte LLC is its subsidiary.

137.   The consolidated financial statements that Mawson Infrastructure prepares and files with the SEC "include[s] the results of the Company's subsidiaries," including "Mawson Bellefonte LLC."

138.   Mawson Infrastructure and Mawson Bellefonte comingle funds— Mawson Infrastructure rendered the two payments that were actually made to Plaintiff.

139.   Additionally, the funds of Cosmos, another Mawson Infrastructure subsidiary, have been comingled with those Defendants inasmuch as a credit due to Cosmos was applied to a contract executed by Mawson Bellefonte, which in reality is for the benefit of Mawson Infrastructure.

140.   Further, per the deposition testimony of their corporate representative in another litigation, the funds of Luna have also been comingled with those of Cosmos and Mawson Infrastructure.

141.   Per SEC filings and Mawson Infrastructure's own press releases, Mawson Bellefonte entered into a lease agreement for premises for the benefit of Mawson

Infrastructure, from which Mawson Infrastructure utilizes and profits from the Equipment that is the subject of the Contract at issue.

142.    Upon information and belief, Mawson Bellefonte is not adequately capitalized and did not have sufficient funds to cover its foreseeable liabilities, including those owed to Blockware, creating an unjust result for creditors.

143.    Per the deposition testimony of their corporate representative, Luna was and/or is likely undercapitalized and today, Mawson Infrastructure, Cosmos, and Luna could not, separately, or together satisfy a $15.3 million judgment in another litigation matter.

144.    Upon information and belief, Mawson Infrastructure completely dominates and controls Mawson Bellefonte and uses it to defraud its customers and hinder creditors, such as Plaintiff herein.

145.    Mawson Bellefonte has no separate management and shares its executive team with Mawson Infrastructure.

146.    Upon information and belief, Mawson Infrastructure regularly fails to observe business formalities regarding its management and operation of Mawson Bellefonte.

147.    Upon information and belief, Mawson Infrastructure has used Mawson Bellefonte, and its other subsidiaries, as a vehicle to commit fraudulent and other wrongful acts against Plaintiff and other members of the public.

148.    Upon information and belief, Mawson Infrastructure has apparently made a regular practice of using its subsidiaries, including Cosmos, to commit such wrongful acts and avoid its liabilities.

149.    As such, Mawson Bellefonte is the alter ego of Mawson Infrastructure, and Mawson Infrastructure is liable for Mawson Bellefonte's debt herein under a veil piercing or alter ego theory.

### SIXTH CLAIM FOR RELIEF

**Price of Goods Sold and Delivered (U.C.C. § 2-709) against Mawson Bellefonte LLC**

150.    Plaintiff hereby incorporates the allegations set forth in the preceding paragraphs 1–149 as though set forth here in their entirety.

151.    Plaintiff is a merchant generally engaged in, among other things, the business of selling or contracting to sell certain goods.

152.    Mawson Bellefonte is a merchant who is engaged in, among other things, the business of buying or contracting to sell certain goods.

153.    On or about May 24, 2023, Plaintiff sold and delivered to Mawson Bellefonte $350,000.00 worth of Equipment, as further detailed in the Contract.

154.    Mawson Bellefonte accepted that Equipment, but failed to pay the price of the Equipment as it became due.

155.    Accordingly, Mawson Bellefonte is liable to Plaintiff for the price of the merchandise together with incidental damages, in an amount to be proven at trial, but not less than $115,500.00, plus any special, indirect, incidental, or consequential damages, and interest.

156.    Upon information and belief, as of April 16, 2024, Plaintiff additionally suffered consequential damages due to its lost profits caused by the failure to remit payment, in an amount to be determined at trial of not less than $358,688.97.

157.    As such, Plaintiff has suffered damages in an amount to be determined at trial but in no event less than $474,188.97, plus any other special, indirect, incidental, or consequential damages, and interest.

### SEVENTH CLAIM FOR RELIEF

**Price of Goods Sold and Delivered (U.C.C. §2-709) against Mawson Infrastructure Group, Inc. under Alter Ego Theory**

158.    Plaintiff hereby incorporates the allegations set forth in the preceding paragraphs 1–157 as though set forth here in their entirety.

159.    Plaintiff is a merchant generally engaged in, among other things, the business of selling or contracting to sell certain goods.

160.    Mawson Bellefonte is a merchant who is engaged in, among other things, the business of buying or contracting to sell certain goods.

161.    On or about May 24, 2023, Plaintiff sold and delivered to Mawson Bellefonte $350,000.00 worth of Equipment, as further detailed in the Contract.

162.    Mawson Bellefonte accepted that Equipment, but failed to pay the price of the Equipment as it became due.

163.    Accordingly, Mawson Bellefonte is liable to Plaintiff for the price of the merchandise together with incidental damages, in an amount to be proven at trial, but not less than $115,500.00, plus any special, indirect, incidental, or consequential damages, and interest.

164.    Upon information and belief, as of April 16, 2024, Plaintiff additionally suffered consequential damages due to its lost profits caused by the failure to remit payment, in an amount to be determined at trial of not less than $358,688.97.

165.    As such, Plaintiff has suffered damages in an amount to be determined at trial but in no event less than $474,188.97, plus any other special, indirect, incidental, or consequential damages, and interest.

166.    Mawson Bellefonte was and is the alter ego of Mawson Infrastructure and therefore Mawson Infrastructure is liable for the moneys owed by Mawson Bellefonte.

167.    Mawson Infrastructure's CEO signed the Contract.

168.    Mawson Infrastructure's CEO and COO negotiated the Contract.

169.    Per the Contract, email notifications were to be sent to Mawson Infrastructure's "mawsoninc.com" email addresses.

170.    Per the Contract, hard copy notices were to be sent to an address in Sharon, Pennsylvania, which is the former address of Mawson Infrastructure's principal executive offices.  Upon information and belief, another Mawson Infrastructure subsidiary, Luna Squares Property ("Luna") leased the property at the Sharon address.

171.    Upon information and belief, throughout the relevant period, Mawson Infrastructure controlled and dominated the affairs of Mawson Bellefonte, such that Mawson Bellefonte was and is an alter-ego of Mawson Infrastructure.

172.    Mawson Infrastructure expressly states in its SEC filings that Mawson Bellefonte LLC is its subsidiary.

173.    The consolidated financial statements that Mawson Infrastructure prepares and files with the SEC "include[s] the results of the Company's subsidiaries," including "Mawson Bellefonte LLC."

174.    Mawson Infrastructure and Mawson Bellefonte comingle funds— Mawson Infrastructure rendered the two payments that were actually made to Plaintiff.

175.     Additionally, the funds of Cosmos, another Mawson Infrastructure subsidiary, have been comingled with those Defendants inasmuch as a credit due to Cosmos was applied to a contract executed by Mawson Bellefonte, which in reality is for the benefit of Mawson Infrastructure.

176.     Further, per the deposition testimony of their corporate representative in another litigation, the funds of Luna have also been comingled with those of Cosmos and Mawson Infrastructure.

177.     Per SEC filings and Mawson Infrastructure's own press releases, Mawson Bellefonte entered into a lease agreement for premises for the benefit of Mawson Infrastructure, from which Mawson Infrastructure utilizes and profits from the Equipment that is the subject of the Contract at issue.

178.     Upon information and belief, Mawson Bellefonte is not adequately capitalized and did not have sufficient funds to cover its foreseeable liabilities, including those owed to Blockware, creating an unjust result for creditors.

179.     Per the deposition testimony of their corporate representative, Luna was and/or is likely undercapitalized and today, Mawson Infrastructure, Cosmos, and Luna could not, separately, or together satisfy a $15.3 million judgment in another litigation matter.

180.     Upon information and belief, Mawson Infrastructure completely dominates and controls Mawson Bellefonte and uses it to defraud its customers and hinder creditors, such as Plaintiff herein.

181.     Mawson Bellefonte has no separate management and shares its executive team with Mawson Infrastructure.

182.    Upon information and belief, Mawson Infrastructure regularly fails to observe business formalities regarding its management and operation of Mawson Bellefonte.

183.    Upon information and belief, Mawson Infrastructure has used Mawson Bellefonte, and its other subsidiaries, as a vehicle to commit fraudulent and other wrongful acts against Plaintiff and other members of the public.

184.    Upon information and belief, Mawson Infrastructure has apparently made a regular practice of using its subsidiaries, including Cosmos, to commit such wrongful acts and avoid its liabilities.

185.    As such, Mawson Bellefonte is the alter ego of Mawson Infrastructure, and Mawson Infrastructure is liable for Mawson Bellefonte's debt herein under a veil piercing or alter ego theory.

## EIGHTH CLAIM FOR RELIEF

### Unjust Enrichment against Mawson Bellefonte LLC (in the alternative)

186.    Plaintiff hereby incorporates the allegations set forth in the preceding paragraphs 1–185 as though set forth here in their entirety.

187.    Plaintiff delivered the Equipment to Mawson Bellefonte with the reasonable expectation that it would pay for that Equipment.

188.    Mawson Bellefonte accepted the Equipment knowing that Plaintiff reasonably expected to be paid.

189.    By receiving and keeping the Equipment from Plaintiff without making full payment, Mawson Bellefonte was enriched at Plaintiff's expense.

190.    The Equipment enriched and benefitted Mawson Bellefonte, at the expense of Plaintiff.

191.    The $115,500.00 outstanding was and is a detriment and expense to Plaintiff.

192.    Mawson Bellefonte's retention of the Equipment delivered by Plaintiff that it failed to fully pay for is unjust, inequitable, and unconscionable.

193.    Plaintiff pleads this claim separately as well as in the alternative to its other claims, as without such claims it would have no adequate legal remedy.

## NINTH CLAIM FOR RELIEF

### Unjust Enrichment against Mawson Infrastructure Group, Inc. under Alter Ego Theory

194.    Plaintiff hereby incorporates the allegations set forth in the preceding paragraphs 1–193 as though set forth here in their entirety.

195.    Plaintiff delivered the Equipment to Mawson Bellefonte with the reasonable expectation that it would pay for that Equipment.

196.    Mawson Bellefonte accepted the Equipment knowing that Plaintiff reasonably expected to be paid.

197.    By receiving and keeping the Equipment from Plaintiff without making full payment, Mawson Bellefonte was enriched at Plaintiff's expense.

198.    The Equipment enriched and benefitted Mawson Bellefonte, at the expense of Plaintiff.

199.    The $115,500.00 outstanding was and is a detriment and expense to Plaintiff.

200.    Mawson Bellefonte's retention of the Equipment delivered by Plaintiff that it failed to fully pay for is unjust, inequitable, and unconscionable.

201.    Plaintiff pleads this claim separately as well as in the alternative to its other claims, as without such claims it would have no adequate legal remedy.

202.    Mawson Bellefonte was and is the alter ego of Mawson Infrastructure and therefore Mawson Infrastructure is liable for the moneys owed by Mawson Bellefonte.

203.    Mawson Infrastructure's CEO signed the Contract.

204.    Mawson Infrastructure's CEO and COO negotiated the Contract.

205.    Per the Contract, email notifications were to be sent to Mawson Infrastructure's "mawsoninc.com" email addresses.

206.    Per the Contract, hard copy notices were to be sent to an address in Sharon, Pennsylvania, which is the former address of Mawson Infrastructure's principal executive offices.  Upon information and belief, another Mawson Infrastructure subsidiary, Luna Squares Property ("Luna") leased the property at the Sharon address.

207.    Upon information and belief, throughout the relevant period, Mawson Infrastructure controlled and dominated the affairs of Mawson Bellefonte, such that Mawson Bellefonte was and is an alter-ego of Mawson Infrastructure.

208.    Mawson Infrastructure expressly states in its SEC filings that Mawson Bellefonte LLC is its subsidiary.

209.    The consolidated financial statements that Mawson Infrastructure prepares and files with the SEC "include[s] the results of the Company's subsidiaries," including "Mawson Bellefonte LLC."

210.    Mawson Infrastructure and Mawson Bellefonte comingle funds— Mawson Infrastructure rendered the two payments that were actually made to Plaintiff.

211.    Additionally, the funds of Cosmos, another Mawson Infrastructure subsidiary, have been comingled with those Defendants inasmuch as a credit due to Cosmos was applied to a contract executed by Mawson Bellefonte, which in reality is for the benefit of Mawson Infrastructure.

212.    Further, per the deposition testimony of their corporate representative in another litigation, the funds of Luna have also been comingled with those of Cosmos and Mawson Infrastructure.

213.    Per SEC filings and Mawson Infrastructure's own press releases, Mawson Bellefonte entered into a lease agreement for premises for the benefit of Mawson Infrastructure, from which Mawson Infrastructure utilizes and profits from the Equipment that is the subject of the Contract at issue.

214.    Upon information and belief, Mawson Bellefonte is not adequately capitalized and did not have sufficient funds to cover its foreseeable liabilities, including those owed to Blockware, creating an unjust result for creditors.

215.    Per the deposition testimony of their corporate representative, Luna was and/or is likely undercapitalized and today, Mawson Infrastructure, Cosmos, and Luna could not, separately, or together satisfy a $15.3 million judgment in another litigation matter.

216.    Upon information and belief, Mawson Infrastructure completely dominates and controls Mawson Bellefonte and uses it to defraud its customers and hinder creditors, such as Plaintiff herein.

217.    Mawson Bellefonte has no separate management and shares its executive team with Mawson Infrastructure.

218.    Upon information and belief, Mawson Infrastructure regularly fails to observe business formalities regarding its management and operation of Mawson Bellefonte.

219.    Upon information and belief, Mawson Infrastructure has used Mawson Bellefonte, and its other subsidiaries, as a vehicle to commit fraudulent and other wrongful acts against Plaintiff and other members of the public.

220.    Upon information and belief, Mawson Infrastructure has apparently made a regular practice of using its subsidiaries, including Cosmos, to commit such wrongful acts and avoid its liabilities.

221.    As such, Mawson Bellefonte is the alter ego of Mawson Infrastructure, and Mawson Infrastructure is liable for Mawson Bellefonte's debt herein under a veil piercing or alter ego theory.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Blockware Solutions LLC respectfully requests that this Court enter judgment in its favor of Plaintiff and grant Plaintiff the following relief:

(a) For actual, compensatory, consequential, and incidental damages in excess of $474,188.97, in an amount to be determined at trial;

(b) All costs and expenses incurred in connection with this litigation;

(c) Prejudgment and post judgment interest at the maximum amount allowed by law; and

(d) Such other and further relief as this Court deems just and proper.

<u>Jury Demand</u>

Plaintiff demands a trial by jury on all issues so triable.

Dated: Bronxville, New York
April 18, 2024

*/s/ Timothy C. Bauman*

SDNY Bar ID: TB2536

**BAUMAN LAW GROUP, P.C.**
141 Parkway Road, Suite 9
Bronxville, NY 10708
Tel:  (914) 337-1715
Fax:  (914) 361-4008

*Attorneys for Plaintiff Blockware Solutions LLC.*