# Exhibit 1

SALE AND PURCHASE AGREEMENT

This Sale and Purchase Agreement (the "Agreement") is made and entered into as of May __, 2023, by and between Blockware Solutions LLC, a Delaware LLC, with its principal place of business at 3800 N. Lamar Blvd, Ste 200, Austin, TX 78756 ("Seller"), and Mawson Bellefont LLC a Delaware limited liability company, with its principal place of business at 201 Clark Street Sharon PA 16146 ("Buyer").

RECITALS

WHEREAS, Seller is engaged in the business of Bitcoin Mining and is selling power distribution equipment; and

WHEREAS, Buyer desires to purchase such equipment from Seller;

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements contained herein, the parties agree as follows:

1. SALE AND PURCHASE OF EQUIPMENT, AND RELEASE

(a) Seller agrees to sell, and Buyer agrees to purchase, the power distribution equipment which the Seller left at 2022 Axmann Road, Bellefonte, PA, which was not transferred to the landlord, and includes at a minimum the equipment described and pictured in Exhibit A attached hereto (the "Equipment").

(b) The purchase price for the Equipment shall be $350,000 US Dollars (Three hundred and twenty-five thousand dollars) (the "Purchase Price"), which Buyer shall pay to Seller in accordance with the payment terms set forth in Section 2 below.

(c) Seller acknowledges and agrees that $114,400 (one hundred and fourteen thousand) (the "Due Payment") is due and payable to Buyer by the Seller in respect of the sale and transfer of title in respect of certain miners which was duly transferred to Seller on or about June 2022, and for which an invoice was issued by the Buyer. In consideration of the Seller reducing the Initial Payment by the same amount as the Due Payment, Buyer shall release Seller from the obligation to pay the Due Payment. If for any reason Buyer receives or received a payment from for part or all of the Due Payment, Buyer shall promptly notify Seller and remit that amount to Seller. Such amount may be set off against any amounts then owing by Seller to Buyer.

2. PAYMENT

(a) Buyer shall pay the Purchase Price to Seller as follows, and in all cases subject to title first passing to the Buyer:

(i) $175,000 ("Initial Payment") is due and payable within 10 business days of the Effective Date (defined below),

    (ii) by reducing the Initial Payment by the amount of the Due Payment, that is reducing the Initial Payment from $175,000 (one hundred and seventy-five thousand) to $60,600 (sixty thousand, six hundred),

    (iii) then 5 (5) Installment Payments of $35,000 due on the first day of June, July, August, Sept, Nov.

    That is, the net amount paid by Buyer to Seller after all payments are made will be $235,600 (two hundred and thirty-five thousand, and six hundred dollars).

(b) Payment shall be made in United States Dollars by wire transfer to the account designated by Seller.

(c) Any and all Transfer Taxes (as defined below) shall be borne by Seller. Seller shall timely and accurately file all necessary tax returns and other documentation with respect to Transfer Taxes (the "Transfer Tax Returns") and timely pay all such Transfer Taxes. If required by applicable law, Seller will join in the execution of any Transfer Tax Return. For purposes of this Agreement, "Transfer Taxes" means all sales (including bulk sales), use, transfer, recording, value added, ad valorem, privilege, documentary, gross receipts, registration, conveyance, excise, license, stamp or similar Taxes and fees arising out of, in connection with or attributable to the transactions effectuated pursuant to this Agreement.

(d) Payments not received by the first day of each month are subject to a 10% late fee

(e) If payment is not received by the by the 5th day of the month, the entire outstanding balance becomes immediately due and payable to Seller.

3. DELIVERY

(a) The Equipment will be delivered to Buyer by the Seller leaving it in its current location, in-place, at 2000 Axmann Road, Bellefonte, PA (the "Delivery Location") on the Effective Date.

(b) Title and risk of loss or damage to the Equipment shall pass from Seller to Buyer on the Effective Date.

(c) The 'Effective Date' is the date that the lease agreement for premises at the Delivery Location, between Buyer and the landlord of the Delivery Location, Navitus, LLC commences.

4. WARRANTIES

(a) Seller represents and warrants to Buyer that:

    (i) the Equipment was in good working order (ordinary wear and tear excepted) when the site went idle in October 2022 and appeared free of defects in material and workmanship;

    (ii) the Equipment is sold as-is and without any warranty from the Seller;

    (iii) Seller is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware. Seller has all limited liability company power and authority to own and transfer or dispose of the Equipment. Seller is duly qualified to do business and is in good standing in all other jurisdictions in which the ownership of the Equipment make

such qualification necessary, except where the failure to be so qualified would not have a material adverse effect on the consummation of the transactions contemplated by this Agreement, taken as a whole;

(iv) Seller has all limited liability company power and authority to execute and deliver this Agreement and all agreements contemplated hereunder and to consummate the transactions contemplated hereunder. The execution, delivery and performance of the Agreement and all agreements contemplated hereunder, and the consummation of the transactions contemplated hereunder, have been duly and validly authorized by all necessary action on the part of Seller. The Agreement and all agreements contemplated hereunder will constitute, when executed and delivered, the valid and binding obligations of Seller, enforceable against Seller in accordance with their terms, except that enforceability thereof may be limited by bankruptcy, insolvency, reorganization or other similar laws affecting creditor's rights generally and by principles of equity;

(v)  The execution, delivery and performance of this Agreement and all agreements contemplated hereunder, and the consummation of the transactions contemplated hereunder, do not violate or result in a breach of the terms or provisions of, or constitute a default under, create a Lien under, or conflict with or result in the termination of, or require Seller to obtain any consent or approval under any agreements to which the Seller is bound, or the certificate of formation, governing documents or any documents comparable thereto or any amendments or modifications thereto of Seller;

(vi) All consents, approvals, authorizations, and other requirements that must be obtained or satisfied by Seller that are necessary for the execution of this Agreement, the agreements contemplated hereunder, and the consummation of the transactions contemplated hereunder, have been obtained and satisfied; and

(vii)  Seller has good title to the Equipment, and the right to transfer such title. The Equipment shall be sold and conveyed to Buyer free and clear of all liens, charges, claims, counterclaims, rights of set off, rights of recoupment and similar rights, encumbrances, security interests, mortgages, pledges or other claims or interests of any nature (collectively, "Liens").

(b) The warranties set forth in this Section 4 are in lieu of all other warranties, express or implied, including without limitation any warranties of merchantability or fitness for a particular purpose.

(c) Any manufacturer warranties will pass from Seller to Buyer upon execution of this agreement, and will not be made null or void as a result of this Agreement, and Seller will provide reasonable assistance to Buyer in respect of any such transfer or claims on those warranties.

(d) If any Equipment is found to not be in good working order (such equipment being "Faulty Equipment"), Buyer may withhold any amounts which become due and payable to the Seller under this Agreement and apply those withheld amounts for the repair or replacement of the Faulty Equipment.

5. LIMITATION OF LIABILITY

(a) In no event shall Seller be liable to Buyer for any special, indirect, incidental, or consequential damages arising out of or in connection with this Agreement, including without limitation lost profits or business interruption, even if Seller has been advised of the possibility of such damages.

(b) Seller's total liability to Buyer for any and all claims arising out of or in connection with this Agreement shall not exceed the Purchase Price actually paid by Buyer for the Equipment.

6. ASSIGNMENT

Neither party may assign this Agreement without the prior written consent of the other party, which consent shall not be unreasonably withheld.

7. GOVERNING LAW AND VENUE

This Agreement shall be governed by and construed in accordance with the laws of the State of New York State, Manhattan Federal Courts, without regard to its conflicts of laws principles.

8. ENTIRE AGREEMENT

This Agreement, together with its exhibits, constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior negotiations, agreements, and understandings, whether written or oral.

9. COUNTERPARTS

This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

10. BROKERS

No finder, broker, agent or other intermediary has acted for or on behalf of Buyer or Seller in connection with the negotiation or consummation of this Agreement, and there are no claims for any brokerage commission, finder's fee or similar payment due from Buyer or Seller.

11. FURTHER ASSURANCES

Seller shall, execute, acknowledge and deliver all such further acts, deeds and instruments as may be reasonably required for the effective transfer to and possession by Buyer, or its successors or assigns, of any of the Equipment.

12. SEVERABILITY

If any provision in this Agreement shall be determined to be invalid, illegal or unenforceable, in any respect, the remaining provisions of this Agreement shall not be in any way impaired, and the illegal, invalid or unenforceable provision shall be fully severed from this Agreement and there shall be automatically added in lieu thereof a provision as similar in terms and intent to such severed provision as may be legal, valid and enforceable.

13. TERMINATION

This Agreement may be terminated (i) by written notice by either party to the other party if the other party materially breaches this agreement, (ii) by written agreement of the parties, or (iii) by written notice by

either party to the other party if the Effective Date has not occurred within 6 months of the execution of this Agreement.

14. NOTICES

All notices, requests, consents, claims, demands, waivers and other communications hereunder shall be in writing and shall be deemed to have been given: (a) when delivered by hand (with written confirmation of receipt) or delivered by email; or (b) when received by the addressee if sent by a nationally recognized overnight courier, for delivery the next day (receipt requested). Such communications must be sent to the respective parties at the following addresses:

If to Buyer:

201 Clark Street Sharon PA 16146
Attn: James Manning, Chief Executive Officer
Email: james@mawsoninc.com

With a copy: General Counsel
Email: legal@mawsoninc.com

If to Seller:

Blockware Solutions LLC
3800 N. Lamar Blvd, STE 200
Austin, TX 78756
Warren@BlockwareSolutions.com
Mason@BlockwareSolutions.com


IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.
SELLER:


Blockware Solutions LLC
By: _____
Name: _____
Title: _____

BUYER:
Mawson Bellefont LLC
By: _____
Name: James Manning
Title: Chief Executive Officer

Exhibit A
Equipment List & Photo Evidence of In-Situ Hardware Included in the Sale

| Item | Description | Quantity |
|---|---|---|
| 1 | LESS FUSES | 1 |
| 2 | HCJ50918-PNLBD INTERIOR I-LINE 800A MLO 3PH Square D Panels. Loaded with 60amp breakers | 4 |
| 3 | 5 KV Fused Disconnect Federal Pioneer load break switch model NAL-5, 4.16kV, 600A, 60kV BIL, 40 KA | 2 |
| 4 | Fuse Refills, Westinghouse RBA-400, 8.25 kV, 400E | 9 |
| 5 | 800amp, Micrologic 6.0A LSIG trip unit, I-Line, Load Lugs Provided. | 4 |
| 6 | Siemens, RLE-800, 800 amp "Extended Interrupting" manually operated | 2 |
| 7 | Eaton, CHND3800T33W, 3p, 65kAIC@ 480v, 800amp, 100% Rated, RMS-310 LSIG Trip Unit, lugs sold separately. | 2 |
| 8 | Low Voltage: 480 Y 277, 10 kV BIL | 1 |
| 9 | electrically operated vacuum circuit breaker | 1 |
| 10 | 4] 800amp LSIG, 100% Fixed Mounted Breakers | 1 |
| 11 | 4] 800amp LSIG, 100% Fixed Mounted Breakers | 1 |
| 12 | External Mount Surge Protection Device | 2 |
| 13 | 800A NEMA 1 Panel Board 8x with 8x breakers | 8 |
| 15 | National Industri 2666/2000kVA 4160 Delta - 480/277 Dry Type Transformer (GA0094) | 1 |
| 16 | CH 4000A Pow-R-Line PRL-C LSIG Main Breaker Switchboard 480Y/277 (DW4213) | 1 |



T2 Gear - Entire Lineup

T3 Gear - Minus Transformer



T4 Gear - Entire Lineup

